May it please the Court, my name is Holly Hanover, and I represent the appellant, Mr. Rosales-Gonzales, in this matter. Your Honors, I'd like to reserve the last two minutes of my time for rebuttal. Thank you. Your Honor, Mr. Rosales-Gonzales is seeking for this Court to apply its precedence from Gonzales-Sotelo consistently to hold that regardless of whether or not it benefits or harms a defendant, district courts may not invoke their discretion to The main point we're trying to make in this appeal is that in light of Gonzales-Sotelo, it would be completely unfair to tell the trial courts or the district courts that they can't exercise their discretion to give non-fast-track defendants a fast-track sentence, but they can exercise it the other way, to give fast-track defendants a non-fast-track sentence. Now, Counsel, may I just ask you a question since this time is limited? Are there any other departures under Section 5K of the Sentencing Guidelines that are mandatory for the district court to grant if jointly requested by the parties? To my knowledge, there are not, Your Honor. Most of the departures, especially listed under 5K, are considered discretionary, but because 5K 3.1 was promulgated by Congress through the PROTECT Act of 2003, the discretion is far different under this particular downward departure as opposed to other cases. Is this the only one prescribed by Congress? I mean, why should we treat the fast-track departure any differently than other cases? Because it is mandated by Congress. Most of the downward departures that are listed in the United States Sentencing Guidelines are promulgated by the Sentencing Commission. And approximately four to five years ago, those guidelines were determined to be advisory only. In this particular case, since it's promulgated by Congress, it doesn't have the same discretionary or advisory... But Congress didn't make the fast-track mandatory. It provided an avenue to authorize fast-track because of the benefits that fast-track provides to all the people. I mean, it was congressional policy. That is correct, Your Honor. But in Gonzales-Sotelo, the court made a determination that it's a plain error when the district court makes a decision whether or not to grant or deny a downward departure that reflects a disagreement with the guidelines. But not a disagreement with the guidelines, but a disagreement with congressional policy instead. And that's what we have in this particular case. What do you make of the language that says, on motion of the government, the court may depart? Yes, Your Honor, that is the language, but according to... Not shall depart, may depart. Yes. So what do you make of that? Your Honor, I believe that it gives the court authority to grant the downward departure, but under Gonzales-Sotelo, the disagreement has to do with congressional policy versus the sentencing guidelines. And in our particular case, the court disagreed not with the guidelines, but with the congressional policy. Well, didn't the judge say, gee, he's been here, what, five times? How many priors does he have? One, two, three, four? I think four priors. Yeah. I mean, why wouldn't the judge be within his discretion to say, look, you know, with a rap sheet like that, in my discretion, I choose not to depart? I believe it would be a matter of discretion, but the procedure that was invoked in this particular case was improper, in our opinion. What the judge should have done was granted the downward departure based upon whether or not the defendant actually met the requirements of the fast track program. And in my opinion, he did. And then from that point, if it disagreed with the guideline range that resulted from that, it certainly had the discretion to vary upward. The difference there, however, would be that the court would have to justify the reasons for the upward variance in that particular case. So you're really arguing procedural error, not that there was a mandatory obligation on the district court to comply with the fast track program. That's correct. We believe that the court committed procedural error by applying the external factors to whether or not the defendant applied or qualified or met the requirements of the fast track program. In addition to that, Your Honor, one other reason that the court committed procedural error was that it made the decision about the length of the sentence before calculating the guidelines. In this particular case, the court very quickly after the sentencing hearing began, made a determination that Mr. Gonzalez should not qualify for the downward departure because he had prior convictions, because he had more time on a previous case, and because he had several deportations. Did the district court adequately consider the fact that your client had a difference now in the sentencing, the fact that your client had suffered a stroke? I don't believe he actually took that mitigating circumstance into account when he imposed sentencing. I believe it was essentially ignored at the time of sentence. Was that properly raised before him? The issue of whether or not... The issue is that he had a stroke, and therefore you ought to take that, his health, into consideration. Yes, we made a request through downward departures 5K2.0 requesting that the court, under a totality of circumstances, depart downward, and that was one of the bases for that, and we argued that during the sentencing hearing as well. Didn't the judge say something, you may have had a stroke, but you look okay to me, or something in that order? I'm sorry, Your Honor? Didn't the judge say something like, I understand you had a stroke, but you appear to have recovered, you look okay now? He did make a comment to that effect. To explain to Your Honors, when I first met my client, I had had him on a previous case, and his mental capacities were fine on the previous case. When I first met him on this case, he was not in very good shape. His mental acuity was very down. His left side was not working properly. He could barely move. Over the course of my representation of about three to five months, I can't remember the exact time period, but his condition did improve, and it was not nearly as noticeable by the time we got to sentencing. He says, and as I said, my own assessment of him today is he seems just fine. Yes, because he was able to respond to questions and answer the judge when he posed various issues to him. Can I take you back to Gonzalez-Sotelo? In that case, it speaks only to the congressional policy underlying the fast-track departure, insofar as this court held such disparities were warranted. And similarly to me, unless you can point it out, says nothing at all about whether this departure was intended to be mandatory. Can you point to me in any place in that case? According to Gonzalez-Sotelo, their rationale in the decision was based on the fact that there is a difference in the standard of how a court would have a discretion on a particular case. And in Gonzalez-Sotelo, what they basically said was that unlike the majority of guidelines that are promulgated by the Sentencing Commission, Congress itself had expressly authorized downward departures for fast-track. And I think that that was the main reason that the court elected to reject the district court's departure from that. The specific reason that the court departed was an essential disagreement with the program itself. And in this particular case, that was the same situation. Judge Burns indicated that he was very dissatisfied with the implementation of the congressional policy in our particular case. But where do we get the mandatory language that you suggest? It's not listed as a per se mandatory language, but I believe that the rationale seems to point in that direction, Your Honor. Thank you. Does Judge Burns have a policy against following the fast-track recommendation? Has he expressed that? He has expressed that to me during this case, but also I've talked with federal defenders and several other attorneys, and it does seem to be the case that in situations where clients or defendants have prior deportations or prior convictions for illegal entry or even a prior participation in a fast-track program, this judge is disinclined to grant fast-track departures. And I see that I'm starting to run out of time. I would like to revert back. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Stephen Lee for the United States. Your Honors, the Court properly exercised discretion in this case not to depart downward for the fast-track departure as requested by the parties. Mr. Rosales-Gonzalez's sentence was substantively reasonable. The record is clear that there was no abuse of discretion in denying a four-level fast-track departure in this case. Your Honors, I would like to distinguish Gonzales-Otello for a minute. In Gonzales-Otello, the district court buried down or imposed a sentence because of a perceived disparity between two defendants. A defendant that was sentenced earlier that day and Mr. Gonzales-Otello. In this case, the record is clear that the sentence imposed was not based on any perceived disparity, that the sentence imposed was within the case law precedent of this circuit, that it was under an individualized assessment based upon the defendant's characteristics, his prior immigration and criminal history, the factors set forth in Section 3553. Section 5K3.1 clearly states that the court may depart downward four levels upon motion of the government. In this case, the court exercised discretion in denying the four-level fast-track departure, and it made clear throughout the sentencing colloquy that it was not going along with the four levels. The record doesn't reflect that the court had a predetermined sentence and worked backwards to get to that point. The court from its onset stated that it was not on board with a fast-track departure for reasons enumerated in the Cole Memo. It made reference to the Cole Memo, while not binding on the court, sets forth guidelines for the U.S. Attorney's Office to implement fast-track programs and certain factors to take into consideration, such as the defendant's immigration and criminal history, recidivism. Well, counsel, what bothered me was the judge said, I have some preliminary thoughts, and when you see what he said, it almost looks as if he had predetermined the sentence before he even began to analyze what it was all about. And you say, that's okay? Your Honor, the court, in deciding what sentence to ultimately impose, one of the factors that it did take into consideration were the lengths of his prior sentences that he received most recently, 15 months on his last 1326 prosecution. That was one of the many factors that the court took into consideration in deciding whether or not to grant the fast-track departure upon motion of the parties. Unless the court has any questions, the government submits on briefing. Thank you, Mr. Lee. Thank you, Your Honor. Ms. Hanover, you have about a minute and change left. I'll try to make it quick, then, Your Honor. Your Honor, again, I want to reiterate that the judge certainly could impose a sentence that he felt adequately would deter the defendant in this particular case. But in our opinion, the procedure he should have used would be to determine that he complied with or didn't comply with the requirements of the fast-track program and either grant it or not grant it to fast-track. And I believe he would have qualified for it because he met every single requirement under the fast-track program. And then, if he disagreed with the sentence, he should have varied upward and given his justification for doing so. Judge Burns strikes me as a pretty voluble fellow. He does a lot of thinking out loud. But I don't see anywhere in the record where he says, I don't believe in fast-track. I think it's a bunch of hooey. I'm never going to impose it. Am I right about that? I believe you are, Your Honor. I don't think he's got a hard-and-fast rule about every single fast-track case. But I do think that he's got a particular proclivity to deny fast-track under these circumstances. Okay. But he's the judge. And these circumstances are very common. He's the decider. He is, Your Honor. Additionally, Your Honor, the other procedural problem with this is that I do believe that Judge Burns made a determination about the sentence before he even considered the guidelines. On page 7 of the transcript, Judge Burns indicated that he was not inclined to follow the fast-track recommendation. He laid out his reasons that had to do with the fact that my client had priors. And he said that this sentence had to be longer than 15 months. That determination was made long before the guidelines were determined, I believe, later on page 20 of the transcript. Thank you, Ms. Hanover. Mr. Lee, thank you, too. The case just argued and submitted.
judges: Nelson, Silverman, Wardlaw